IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLARD E. BARTEL, et al., | : | CONSOLIDATED UNDER |
| (Administrators for Estate of | : | MDL 875 |
| Bjorn M. Dahl) | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| A-C PRODUCT LIABILITY TRUST, | : | E.D. PA CIVIL ACTION NO. |
| ET AL., | : | 2:11-32289-ER |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    January 29, 2016

This case was transferred in February 2011 from the
United State District Court for the Northern District of Ohio to
the United States District Court for the Eastern District of
Pennsylvania, where it became part of the consolidated asbestos
products liability multidistrict litigation (MDL 875). The case
was assigned to the Court's maritime docket ("MARDOC"). Willard
E. Bartel and David E. Peebles ("Plaintiffs"), Administrators of
the Estate of Bjorn Dahl, allege that Mr. Dahl ("Decedent" or
"Mr. Dahl") was exposed to asbestos while working aboard various
ships. Plaintiffs assert that Decedent developed two asbestos-
related illnesses as a result of his exposure to asbestos aboard
those ships.

For the reasons that follow, the Court will deny Defendants' motion.

## I.  BACKGROUND

In 1995, Mr. Dahl brought claims for non-malignant asbestos-related disease (now pursued by Plaintiffs after the death of Mr. Dahl) against various defendants, including shipowners represented by Thompson Hine LLP ("Defendants" or the "Thompson Hine Shipowners"). By way of Order dated May 2, 1996, Judge Charles Weiner[1] dismissed those claims administratively, leaving open the possibility for the action to be pursued at a later, unspecified date.[2] Approximately one year after he filed

---

[1]     Judge Weiner presided over MDL 875 from its inception in 1991 until his passing in 2005. In 2005, Judge James Giles was designated to preside over MDL 875, where he remained until his resignation from the bench in 2008. In October 2008, Judge Eduardo Robreno, the undersigned, was appointed to succeed Judge Giles, and he has presided over MDL 875 since that date.

[2]     On May 2, 1996, Judge Weiner administratively dismissed all pending MARDOC claims without prejudice, noting that the claimants had "provide[d] no real medical or exposure history," and had been unable to do so for months. In re Asbestos Prods. Liab. Litig. (No. VI), No. 2 MDL 875, 1996 WL 239863, at *1-2 (E.D. Pa. May 2, 1996). Judge Weiner also ordered that these "asymptomatic cases" could be activated if the plaintiffs began to suffer from an impairment and could show (1) "satisfactory evidence [of] an asbestos-related personal injury compensable under the law," and (2) "probative evidence of exposure" to a defendant's products. Id. at *5. On March 14, 1997, Judge Weiner applied that dismissal order to all future MARDOC cases that had not yet been filed. In 2002, the MDL Court ordered that administratively dismissed cases remain active for certain purposes (e.g., entertaining settlement motions and

his asbestos action (and approximately one month after it was dismissed), in June of 1996, Mr. Dahl filed for bankruptcy pursuant to Chapter 7 of the bankruptcy code, without listing his asbestos claims as an asset in the bankruptcy filing. Approximately four months later, in October of 2005, the bankruptcy case was closed. Thereafter, in September of 1997, Mr. Dahl was diagnosed with asbestos-related cancer, giving rise to a claim for a malignant asbestos-related disease. On February 7, 2011 (approximately fifteen years after he was discharged from bankruptcy, and approximately sixteen years after Mr. Dahl first filed his asbestos action), the MDL Court reinstated Mr. Dahl's asbestos action, which had been dismissed by Judge Weiner in 1996. A summary of this timeline of events is as follows:

- 1995 - Asbestos action filed (non-malignancy claims)
- May 1996 - Asbestos action administratively dismissed
- June 1996 - Bankruptcy action filed
- October 1996 - Bankruptcy action closed
- September 1997 - Cancer diagnosis (malignancy claims)
- February 2011 - Asbestos action reinstated by MDL Court

---

orders, motions for amendment to the pleadings, etc.), and in 2003, clarified that the administrative dismissals were "not intended to provide a basis for excluding the MARDOC claimants from participating in settlement programs or prepackaged bankruptcy programs[.]" In re Am. Capital Equip., 296 Fed. App'x 270, 272 (3d Cir. 2008) (quoting In re Asbestos Prods. Liab. Litig. (No. VI), Order Granting Relief to MARDOC Claimants with Regard to Combustion Eng'g, Inc., No. 2 MDL 875 (E.D. Pa. Feb. 19, 2003)).

The Thompson Hine Shipowners have moved for summary judgment, arguing that (1) Plaintiffs' non-malignancy claims are barred by way of judicial estoppel because Mr. Dahl failed to disclose the asbestos action as an asset in his bankruptcy filing, and (2) Plaintiffs cannot pursue any of the asbestos claims in the asbestos action (neither the initial non-malignancy claims nor his post-petition malignancy claims) because the entire asbestos action is now owned by the bankruptcy estate.

## II.   LEGAL STANDARD

### A.   Summary Judgment Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." <u>Pignataro v. Port Auth. of N.Y. & N.J.</u>, 593 F.3d 265, 268 (3d Cir. 2010) (citing <u>Reliance Ins. Co. v. Moessner</u>, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 250.

B.   <u>The Applicable Law</u>

The parties appear to assume that Defendants' legal arguments regarding "judicial estoppel" and the "real party in interest" are matters of federal law that should be decided in the first instance by the Court. The Court agrees with this approach. <u>See Ryan Operations G.P. v. Santiam-Midwest Lumber Co.</u>, 81 F.3d 355, 358 (3d Cir. 1996).[3] In matters of federal law,

---

[3]       "A federal court's ability to protect itself from manipulation by litigants should not vary according to the law

the MDL transferee court applies the law of the circuit where it
sits, which in this case is the law of the U.S. Court of Appeals
for the Third Circuit. Various Plaintiffs v. Various Defendants
("Oil Field Cases"), 673 F. Supp. 2d 358, 362-63 (E.D. Pa. 2009)
(Robreno, J.). Therefore, the Court will apply Third Circuit law
in deciding the issues raised by Defendants' motion.

## III. THE PARTIES' ARGUMENTS

### A.   Judicial Estoppel (Non-Malignancy Claims)

Defendants contend that Plaintiffs' non-malignancy
claims are barred on grounds of judicial estoppel. Specifically,
they contend that Mr. Dahl took irreconcilably inconsistent
positions in his bankruptcy proceeding and the instant
proceeding. Defendants state that Mr. Dahl concealed the
existence of his non-malignancy asbestos claims when filing for
bankruptcy by not reporting them as pending or likely claims on
Schedule B ("Personal Property"), while simultaneously asserting
such claims in the current (and then-already-pending) asbestos
action. They further assert that a finding of bad faith is
warranted because Mr. Dahl had knowledge of the non-malignancy
asbestos claims at the time that he filed for bankruptcy and had

---

of the state in which the underlying dispute arose." Ryan
Operations, 81 F.3d at 358 n.2.

a motive to conceal the claims from the Bankruptcy Court (i.e., to keep any proceeds of the claims while reducing the amount of assets available for distribution amongst the creditors - a motive Defendants assert is common to nearly all debtors in bankruptcy).

Finally, Defendants contend that no lesser remedy is warranted because the sanction of barring the non-malignancy asbestos claims is necessary to (1) keep Plaintiffs from profiting from the omission and (2) preserve the integrity of the bankruptcy proceedings.

Plaintiffs contend that the non-malignancy asbestos claims are not barred on grounds of judicial estoppel. First, Plaintiffs contend that Mr. Dahl did not take inconsistent positions between his bankruptcy filing and the present asbestos action because at the time of his bankruptcy filing – and throughout the entire duration of that action – his non-malignancy asbestos claims were dismissed, such that he was not required to list them as an asset in his bankruptcy action. Moreover, Plaintiffs argue that even if Mr. Dahl should have identified the non-malignancy asbestos claims, the failure to do so was a good faith mistake such that judicial estoppel is not warranted.

Second, Plaintiffs assert that Defendants bear the burden of establishing bad faith, but have no evidence that Mr. Dahl acted in bad faith when he did not list his non-malignancy asbestos claims as an asset in his bankruptcy filing. Additionally, Plaintiffs assert that bad faith cannot be proven in light of the fact that those claims were dismissed long before he filed for bankruptcy and were only reinstated by the MDL Court long after the bankruptcy was closed.

B.   Real Party in Interest/Standing

1.   Non-Malignancy Claims (Initial Claims)

In the alternative (as to the non-malignancy claims initially asserted in Mr. Dahl's asbestos action), Defendants contend that Plaintiffs have no right to pursue the non-malignancy claims because the claims no longer belong to Plaintiffs and instead belong to the bankruptcy trustee. Specifically, Defendants argue that, even though Mr. Dahl did not report these asbestos claims as assets in the bankruptcy filing, as required by 11 U.S.C. § 541(a)(1), those claims automatically became part of the bankruptcy estate when the bankruptcy petition was filed. As a result, they assert that only the bankruptcy trustee can administer the claims.

Defendants also argue that, because Mr. Dahl did not reveal the non-malignancy asbestos claims, such that they were never properly scheduled as assets, the trustees were incapable of passing those claims back to Mr. Dahl through abandonment of any remaining assets not administered (as would normally happen pursuant to 11 U.S.C. § 554). As such, Defendants assert that, even though the bankruptcy action has closed, the rights to the non-malignancy asbestos claims did not revert back to Mr. Dahl upon that closure and instead remain with the trustee, such that Plaintiffs may not now pursue them.[4]

Plaintiffs assert that, because the non-malignancy asbestos claims were dismissed during the entire pendency of the bankruptcy action, they were never assets of the bankruptcy estate – regardless of whether or not Mr. Dahl disclosed them. In short, Plaintiffs argue that the bankruptcy estate could not have an asset that was not in existence at the time of the bankruptcy.

---

[4]     Defendants also assert that Plaintiffs may only pursue claims held by Mr. Dahl at the time of his death and that, because the claims belonged to the bankruptcy trustee at the time of Mr. Dahl's death, there is no way Plaintiffs can salvage those claims now. In support of this argument, Defendants rely upon two decisions regarding FELA: Flynn v. New York, N.H., & H.R. Co., 283 U.S. 53, 56 (1931), and Michigan Central R. Co. v. Vreeland, 227 U.S. 59, 70 (1913).

2.   <u>Malignancy Claims (Post-Petition Claims)</u>

In their reply brief (as to the malignancy claims that arose post-petition), Defendants assert that Mr. Dahl's claims for malignant asbestos-related disease (based upon his post-petition diagnosis of cancer) are property of the estate, such that Plaintiffs also lack standing to pursue these claims – despite the fact that the diagnosis of cancer did not occur until <u>after</u> Mr. Dahl's bankruptcy action was filed (and closed) – because those claims are sufficiently rooted in his pre-bankruptcy past to constitute property of the estate.[5] Specifically, Defendants argue that, under <u>Segal</u>, any new claim that is "sufficiently rooted in the pre-bankruptcy past" should be included in the debtor's bankruptcy estate, 382 U.S. at 380, and that, since the asbestos exposures (and the non-malignant asbestos injury) arose pre-bankruptcy, any claims for injuries arising therefrom (such as Mr. Dahl's cancer claims) should be considered part of the bankruptcy estate because they are "sufficiently rooted in the pre-bankruptcy past."

---

[5]      In support of this contention, Defendants rely primarily upon <u>Segal v. Rochelle</u>, 382 U.S. 375, 380 (1966), and <u>In re Richards</u>, 249 B.R. 859, 861 (Bankr. E.D. Mich. 2000)(involving a post-petition asbestos claim). In addition, Defendants also cite to a number of cases that did not involve an asbestos claim: <u>In re Webb</u>, 484 B.R. 501 (Bankr. M.D. Ga. 2012); <u>In re Salander</u>, 450 B.R. 37, 46 (Bankr. S.D.N.Y. 2011); <u>In re Strada Design Assocs., Inc.</u>, 326 B.R. 229, 236 (Bankr. S.D.N.Y. 2005); and <u>In re Patterson</u>, 2008 WL 2276961 (Bankr. N.D. Ohio June 3, 2008).

Plaintiffs assert that Mr. Dahl's claims for malignant asbestos-related disease (based upon his post-petition diagnosis of cancer) are not property of the estate – and never were – because they did not even arise until after Mr. Dahl was discharged from bankruptcy. In support of this argument, Plaintiffs cite to this Court's decision, Nelson v. A.W. Chesterton, 2011 WL 6016990 (E.D. Pa. Oct. 27, 2011) (Robreno, J.), which held that maritime law follows the "two-disease rule" such that Mr. Dahl's cancer diagnosis was a second and separate malignant disease, which gave rise to a second and separate cause of action distinct from the cause of action on which his asbestos action was initially filed. As such, Plaintiffs contend that, even if the Court should determine that Mr. Dahl's non-malignancy claims are property of the bankruptcy estate that Plaintiffs are now barred from pursuing, the post-petition malignancy claims (for cancer) are not property of the estate (and never were), such that Plaintiffs may still pursue those claims free and clear of any debts not fully paid to creditors in the bankruptcy action.

## IV. DISCUSSION

The bankruptcy code requires debtors seeking benefits under its terms to schedule, for the benefit of creditors, all

his or her interests and property rights. <u>Oneida Motor Freight, Inc. v. United Jersey Bank</u>, 848 F.2d 414, 416 (3d Cir. 1988); 11 U.S.C. §§ 521, 1125. This duty of disclosure includes not only pending lawsuits or lawsuits the debtor intends to bring, but even any potential and likely causes of action. <u>See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.</u>, 337 F.3d 314, 322 (3d Cir. 2003); <u>Oneida</u>, 848 F.2d at 417 (providing that "[i]t has been specifically held that a debtor must disclose any litigation likely to arise in a non-bankruptcy contest"). However, debtors are not required to list "every 'hypothetical,' 'tenuous,' or 'fanciful' claim on an asset disclosure form." <u>Freedom Med., Inc. v. Gillespie</u>, No. 06-3195, 2013 WL 2292023, at *23 (E.D. Pa. May 23, 2013) (quoting <u>Krystal Cadillac</u>, 337 F.3d at 323).

Once the debtor has filed his bankruptcy petition, the bankruptcy estate - which in a Chapter 7 case is controlled by the trustee - "encompasses everything that the debtor owns upon filing a petition, as well as any derivative rights, such as property interests the estate acquires after the case commences." <u>In re O'Dowd</u>, 233 F.3d 197, 202 (3d Cir. 2000). "While a bankruptcy case is pending, it is the trustee, and not the debtor, who has the capacity to pursue the debtor's claims." <u>In re Kane</u>, 628 F.3d at 637 (internal quotation marks and

citations omitted). Additionally, "[p]ursuant to 11 U.S.C. §
554(d), a cause of action which a debtor fails to schedule,
remains property of the estate because it was not abandoned and
not administered." Allston-Wilson v. Philadelphia Newspapers,
Inc., No. 05-4056, 2006 WL 1050281, at *1 (E.D. Pa. Apr. 20,
2006); see also In re Kane, 628 F.3d at 637 ("an asset must be
properly scheduled in order to pass to the debtor through
abandonment under 11 U.S.C. § 554") (quoting Hutchins v. IRS, 67
F.3d 40, 43 (3d Cir. 1995)).

Typically, the only interests that a bankruptcy estate
owns are those that a plaintiff has at the time the petition is
filed. In re O'Dowd, 233 F.3d 197, 202 (3d Cir. 2000)
(concluding that the bankruptcy "estate encompasses everything
that the debtor owns upon filing a petition") (emphasis added);
11 U.S.C. § 541(a)(1). However, any new, post-petition interest
(such as a legal claim) that is "sufficiently rooted in the pre-
bankruptcy past" can also constitute part of the debtor's
bankruptcy estate. See Segal v. Rochelle, 382 U.S. 375 (1966).

Judicial estoppel is a "doctrine that seeks to prevent
a litigant from asserting a position inconsistent with one that
she has previously asserted in the same or in a previous
proceeding." Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,
81 F.3d 355, 358 (3d Cir. 1996) (internal quotation marks and

13

citations omitted). At the heart of judicial estoppel is the idea that "absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." Id. (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4477 (1981), p. 782). However, this doctrine is "not intended to eliminate all inconsistencies no matter how slight or inadvertent they may be." Id. It "should only be applied to avoid a miscarriage of justice" and "is only appropriate when the inconsistent positions are tantamount to a knowing misrepresentation to or even fraud on the court." Krystal Cadillac, 337 F.3d at 319, 324 (internal quotation marks and citations omitted). The "doctrine of judicial estoppel does not apply 'when the prior position was taken because of a good faith mistake rather than as part of a scheme to mislead the court.'" Ryan Operations, 81 F.3d at 362 (quoting Konstantinidis v. Chen, 626 F.2d 933, 939 (D.C. Cir. 1980)). "It is a fact-specific, equitable doctrine, applied at courts' discretion." In re Kane, 628 F.3d 631, 638 (3d Cir. 2010).

The Third Circuit Court of Appeals has formulated this test to help determine if judicial estoppel is appropriate:

First, the party to be estopped must have taken two
positions that are irreconcilably inconsistent.
Second, judicial estoppel is unwarranted unless the
party changed his or her position "in bad faith –
i.e., with intent to play fast and loose with the
court." Finally, a district court may not employ
judicial estoppel unless it is "tailored to address
the harm identified" and no lesser sanction would
adequately remedy the damage done by the litigant's
misconduct.

Krystal Cadillac, 337 F.3d at 319-20 (quoting Montrose Med. Grp.

Participating Sav. Plan v. Bulger, 243 F.3d 773, 779-80 (3d Cir.

2001)). The Third Circuit has further concluded that a

"rebuttable inference of bad faith arises when averments in the

pleadings demonstrate both knowledge of a claim and a motive to

conceal that claim in the face of an affirmative duty to

disclose." Id. at 321 (citing Oneida Motor Freight, 848 F.2d at

416-18); Ryan Operations, 81 F.3d at 363. However, the

application of this inference does not arise "from the mere fact

of nondisclosure." Ryan Operations, 81 F.3d at 364. Third

Circuit precedent makes clear that a court should conduct an

individualized factual assessment regarding, inter alia,

knowledge and motive of the debtor surrounding disclosure of

assets in a bankruptcy action. See id. at 363-64 (concluding

that the inference did not apply where the creditors were most

likely unaffected by the failure to disclose, the debtor

received no benefit from its non-disclosure, and that there was

no evidence that the debtor sought to conceal the claims deliberately); Krystal Cadillac, 337 F.3d at 321-324 (applying estoppel after analyzing the facts regarding knowledge and motive).

**V.   ANALYSIS**

    A.   Judicial Estoppel (Non-Malignancy Claims)

        Defendants contend that, because the dismissal of Mr. Dahl's asbestos claims was merely administrative (such that the claims could be reinstated by Mr. Dahl or the MDL Court at some point in the future), the claims were assets whose omission from Schedule B of the bankruptcy action constituted an inconsistent position between the two lawsuits and creates an inference of bad faith. Plaintiffs contend that because the claims had been in a dismissed stage for a while at the time of the bankruptcy filing, they were not in essence assets and did not need to be disclosed – and that, if they did constitute assets that should have been disclosed, the failure to disclose them was a good faith mistake.

        i.   Step One: Has Plaintiff Taken Two Irreconcilably Inconsistent Positions?

    It is undisputed that Mr. Dahl did not list his non-malignancy asbestos claims (or any other legal claims) as assets

in his bankruptcy filing. His duty of disclosure included identifying pending lawsuits, lawsuits he intended to bring, and any potential and likely lawsuits. See Krystal Cadillac-Oldsmobile, 337 F.3d at 322. By failing to include his non-malignancy asbestos claims as an asset in his bankruptcy filings, Mr. Dahl initially represented to the Bankruptcy Court that such an asset did not exist. Now, in the present action, Plaintiffs are pursuing those same claims that Mr. Dahl represented did not exist. Accordingly, the two positions are irreconcilably inconsistent. See id. at 319-320.

ii.  Step Two: Did Plaintiff Change His Position In Bad Faith

It is difficult to divine, through a prism of twenty years later, the exact nature and scope of the "administrative dismissals." See Bartel v. Various Defendants, 965 F. Supp. 2d 612, 617 (E.D. Pa. 2013) (Robreno, J.) (explaining the difficulty in attempting to discern orders that were entered over twenty years ago in the context of personal jurisdiction in the MARDOC cases).[6] While Judge Weiner's orders appear to invite

---

[6]       "Now, some 25 years later, the Court, with the assistance of counsel, is called upon to divine the meaning of less-than-pellucid orders entered long ago by prior courts, and to disentangle the parties from a web of procedural knots that have thwarted the progress of this litigation." Bartel, 965 F. Supp. 2d at 614.

reinstatement subject to certain conditions, none of the cases that were administratively dismissed was ever reinstated from 1997 to 2009, until this Court, sua sponte, did so en masse. That a layman would have had the foresight to know in 1996 when he filed for Chapter 7 bankruptcy, that fifteen years later a new presiding Judge of the MDL would reopen his asbestos case, albeit sixteen years after it was filed, would have required unrealistic power of prescience. Rather, for all practical purposes, the entire MARDOC litigation in the MDL Court - including Mr. Dahl's case - was in a "black hole," uncertain to ever emerge again. See Hon. Eduardo C. Robreno, The Federal Asbestos Product Liability Multidistrict Litigation (MDL-875): Black Hole or New Paradigm?, 23 Widener L. J. 97, 126 (2013).

Under these circumstances, the Court finds that the failure to disclose the non-malignancy asbestos claims was not in bad faith, nor an attempt to play "fast and loose" with the Bankruptcy Court. See Krystal Cadillac, 337 F.3d at 319-20.[7]

---

[7]     While the Third Circuit has said that, a "rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose," Krystal Cadillac, 337 F.3d at 321, the Third Circuit has also noted that an inference of bad faith does not always arise from "the mere fact of non-disclosure." Ryan Operations, 81 F.3d at 364. Under the facts of this case, the Court need not decide whether there was a lack of bad faith on the part of Mr. Dahl, or whether the inference of bad faith was rebutted, in that in either event, the same result is obtained.

Accordingly, the Court does not find that Mr. Dahl changed his position "in bad faith" such that it warrants the application of judicial estoppel. See Ryan Operations, 81 F.3d at 363.[8] Accordingly, Defendants' motion for summary judgment on grounds of judicial estoppel will be denied. See Anderson, 477 U.S. at 248-50.

B.    Real Party in Interest/Standing

1.    Non-Malignancy Claims (Initial Claims)

Defendants next contend that, despite Mr. Dahl's failure to list the non-malignancy asbestos claims on his bankruptcy petition, the claims now belong to the bankruptcy trustee (pursuant to 11 U.S.C. § 541(a)(1)) such that Plaintiffs have no right to pursue them. They assert that, because Mr. Dahl did not properly schedule those claims as assets, the trustees were incapable of passing those claims back to Mr. Dahl through abandonment of any remaining and unpursued assets as would

---

[8]    Additionally, the Court has reviewed the bankruptcy petition filed by Mr. Dahl, see ECF No. 64-2, and concludes that, to the extent the law generally requires disclosures of the type of claims that were pending at the time of the bankruptcy filing, an omission of those claims may very well have been based on a good faith mistake of what was required by the documents, or a simple incorrect assessment of the viability of his long-dormant claims. See Ryan Operations, 81 F.3d at 362.

normally happen pursuant to 11 U.S.C. § 554. Here, the
Defendants' position has some initial merit.

It is true that, once a debtor has filed his
bankruptcy petition, the bankruptcy estate, which is controlled
by the trustee, "encompasses everything that the debtor owns
upon filing a petition, as well as any derivative rights, such
as property interests the estate acquires after the case
commences," In re O'Dowd, 233 F.3d 197, 202 (3d Cir. 2000), and
that "it is the trustee, and not the debtor, who has the
capacity to pursue the debtor's claims." In re Kane, 628 F.3d at
637 (internal quotation marks and citations omitted). It is also
true that, "[p]ursuant to 11 U.S.C. § 554(d), a cause of action,
which a debtor fails to schedule, remains property of the estate
because it was not abandoned and not administered." Allston-
Wilson, No. 05-4056, 2006 WL 1050281, at *1; In re Kane, 628
F.3d at 637 (quoting Hutchins, 67 F.3d at 43).

In the instant case, Mr. Dahl erred by failing to
disclose his administratively dismissed non-malignancy asbestos
claims when he filed his bankruptcy petition. While the Court
has held that this error was not in bad faith and thus not
barred by judicial estoppel, these claims are nonetheless part
of the bankruptcy estate as they were not only potential claims,
but were realized claims technically held in abeyance by the

Court, and thus needed to be disclosed. Under these circumstances, the claims remain part of the bankruptcy estate and the trustee remains the real party in interest for such claims, even after the bankruptcy was closed. See Killmeyer v. Oglebay Norton Co., 817 F. Supp. 2d 681, 689 (W.D. Pa. 2011) (granting the trustee's motion to substitute for the plaintiff as the real party in interest since the debtor's unscheduled pre-petition claim could only be administered by the trustee); Saellam v. Norfolk S. Corp., No. 06-123, 2007 WL 1653737, at *4 (W.D. Pa. June 6, 2007) (concluding that "[b]ecause Plaintiff's cause of action is part of the bankruptcy estate, and has not been abandoned by the trustee, I hold Plaintiff is not the real party in interest and that only the trustee in bankruptcy, as sole representative of Plaintiff's estate, has standing to pursue the instant lawsuit"); Allston-Wilson, 2006 WL 1050281, at *1 (holding that where it was undisputed that the plaintiffs cause of action arose before her bankruptcy and that she failed to list the claim on her bankruptcy schedule, only the trustee could pursue the claim); see also Biesek v. Soo Line R. Co., 440 F.3d 410, 413-14 (7th Cir. 2006) (concluding that the trustee was the real party in interest for plaintiff's pre-bankruptcy claim which he failed to list as a bankruptcy asset and upholding the dismissal of the case since the claim did not

belong to the plaintiff and the trustee had not sought to intervene).

Having held that the trustee, and not Plaintiffs, is the real party in interest of the instant non-malignancy asbestos claims, the Court must determine the appropriate remedy. Given that the claims belong to the estate and that, therefore, distributions of any recovery by the trustee should be made in accordance with the priorities set forth in the Bankruptcy Code, the trustee shall be given the opportunity to decide, in the first instance, whether he/she will prosecute the non-malignancy claims.

The Court does not underestimate the practical difficulties involved. The bankruptcy case is now closed in the Bankruptcy Court for the Southern District of Mississippi, and the identity and whereabouts of the trustee are unknown to this Court. To expedite the process of putting the trustee on notice of the claims, the Court will direct the Clerk of this Court to (1) create a copy of this memorandum and accompanying order to be filed on the docket of Mr. Dahl's bankruptcy case in the Bankruptcy Court for the Southern District of Mississippi (No. 96-bk-08785-ERG); (2) ascertain the identity of the trustee; and (3) have served upon the trustee a copy of said memorandum and order at his/her last known address. The trustee will have sixty

(60) days from the date of the filing of the order on the docket of the Bankruptcy Court to seek to reopen the Bankruptcy action and to advise this Court that he/she intends to prosecute the instant non-malignancy asbestos claims.[9] In such event, the Court will stay the instant proceedings while the bankruptcy estate is reopened (providing monthly updates to the Court on the status of the petition to reopen). Once the bankruptcy estate is reopened, the trustee will have thirty (30) days from the date of the reopening of the estate to move this Court to have himself/herself added as the party-plaintiff in this case (with respect to the non-malignancy claims only, with current Plaintiffs continuing as the named plaintiffs with respect to the malignancy claims).

In the event that (1) the trustee fails to advise this Court within sixty (60) days from the date the order is filed on the docket of the Bankruptcy Court that he/she intends to proceed with the instant claims,[10] (2) he/she declines to do so,

_____

[9]     The trustee will be ordered to provide a signed letter certifying his/her (a) filing of a petition with the Bankruptcy Court to reopen Mr. Dahl's bankruptcy proceedings and (b) intention to be added as party-plaintiff in the instant case (with respect to the non-malignancy claims only).

[10]     It is not clear whether the trustee's failure to respond to the Court's order would constitute an express or implied abandonment of the instant claims under 11 U.S.C. § 554. See Mele v. First Colony Life Ins., Co., 127 B.R. 82, 85-86 (D.D.C. 1991) (noting that the mere fact the trustee was

(3) he/she fails to provide a monthly status update, or (4) he/she fails to move to be added as party-plaintiff (with respect to the non-malignancy claims only) within thirty (30) days of the reopening of the bankruptcy action, the Court will give Plaintiffs an additional thirty (30) days[11] to provide this Court with notice that they intend to (1) pursue only the malignancy claims, <u>or</u> (2) petition the Bankruptcy Court for the Southern District of Mississippi to reopen the bankruptcy

---

notified of the pending lawsuit, but failed to administer it, would not necessarily mandate a finding of implied abandonment). Importantly, however, the party seeking to demonstrate abandonment bears the burden of persuasion. <u>Hanover Ins. Co. v. Tyco Industries, Inc.</u>, 500 F.2d 654, 657 (3d Cir. 1974). In bankruptcy proceedings, the trustee's position is similar to that of a fiduciary to both the debtor and creditors. Under the bankruptcy code, the trustee must "investigate the financial affairs of the debtor," 11 U.S.C. § 704(a)(4), and "collect and reduce to money the property of the estate," 11 U.S.C. § 704(a)(1). Moreover, the trustee "has the duty to maximize the value of the estate," <u>Commodity Futures Trading Comm'n v. Weintraub</u>, 471 U.S. 343, 353 (1985), and "in so doing is bound to be vigilant and attentive in advancing the estate's interests." <u>In re Martin</u>, 91 F.3d 389, 394 (3d Cir. 1996). "In sum, it is the trustee's duty to both the debtor and the creditor to realize from the estate all that is possible for distribution among the creditors." <u>Id.</u> (citing 4 Collier, Bankruptcy ¶ 704.01 (15th ed.)).

[11]     This would be ninety (90) days from the date the memorandum and order are filed on the Bankruptcy Court's docket (for events pursuant to (1) or (2)); or thirty (30) days from the date of the pertinent failure pursuant to (3) or (4).

proceedings and move in that court to compel abandonment of the instant non-malignancy claims. <u>See</u> 11 U.S.C. § 554(b).[12]

      If notice is not received from either the trustee or Plaintiffs in the specified timeframe, the Court will dismiss Plaintiffs' case for failure to substitute the real party in interest. <u>See</u> Fed. R. Civ. P. 17(a)(3) ("The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted."). At this time, however, and under these circumstances, summary judgment in favor of Defendants on grounds of the real party in interest/standing will be denied without prejudice as to Plaintiffs' <u>non-malignancy</u> claims. <u>Anderson</u>, 477 U.S. at 248-50.

      2.  <u>Malignancy Claims (Post-Petition Claims)</u>

      Defendants assert that Mr. Dahl's claims for malignant asbestos-related disease (based upon his post-petition diagnosis

---

[12]     In the event that Plaintiffs choose to pursue the non-malignancy claims, they will be ordered to provide a signed letter certifying their intention to petition the Bankruptcy Court to reopen Mr. Dahl's bankruptcy proceedings and move the Bankruptcy Court to compel abandonment of those claims. The Bankruptcy Court for the Southern District of Mississippi is the court in the best position to provide the proper parties (including any potential creditors) with sufficient notice of Plaintiffs' motion to compel abandonment of the instant non-malignancy claims. <u>See</u> 11 U.S.C. § 554(b).

of cancer) are also property of the estate,[13] such that
Plaintiffs also lack standing to pursue these claims – despite
the fact that the diagnosis did not occur until after Mr. Dahl
had been discharged from bankruptcy – because those claims are
sufficiently rooted in his pre-bankruptcy past to constitute
property of the estate.

Because Mr. Dahl's cancer was not diagnosed until
after he was discharged from bankruptcy (and there is no
evidence in the record that he knew of his cancer prior to his
discharge from bankruptcy), it is clear that he was not required
to schedule his malignancy asbestos claims in the bankruptcy
action. The question then, with respect to the post-petition
malignancy claims, is whether the claims were nonetheless
property of the bankruptcy estate by operation of law.

A bankruptcy estate typically owns only those
interests that a plaintiff has at the time a petition is filed,
In re O'Dowd, 233 F.3d at 202 , and 11 U.S.C. § 541(a)(1).
However, the Supreme Court has held that, when a cause of action

---

[13]     This Court has ruled that, under maritime law, a
Plaintiff's non-malignant asbestos related disease and
subsequent malignant asbestos-related disease give rise to two
separate and distinct causes of action. See Nelson v. A.W.
Chesterton, 2011 WL 6016990 (E.D. Pa. Oct. 27, 2011) (Robreno,
J.). As such the bankruptcy estate's ownership of a non-
malignancy claim is entirely separate and distinct from its
potential ownership of a second and subsequent malignancy claim.
Defendants appear to acknowledge and accept both of these
principles.

arises after the filing of a bankruptcy petition, the claim belongs to the bankruptcy estate only if it is "sufficiently rooted in the pre-bankruptcy past." Segal, 382 U.S. at 380. Therefore, the Court must determine whether Mr. Dahl's malignancy claims were sufficiently rooted in the pre-bankruptcy past. Id. In doing so, it will consider the cases relied upon by the Thompson Hine Shipowners to support their contention that the malignancy claims are sufficiently rooted in the pre-bankruptcy estate to constitute property of the estate.

In Segal, the Supreme Court concluded that a tax refund originating from a tax return filed before the bankruptcy petition was property of the estate, even though the refund was not payable until after the petition was filed. Segal, 382 U.S. at 379-82. In explaining its rationale in Segal, the Supreme Court stated:

> The main thrust of [the relevant section of the bankruptcy code] is to secure for creditors everything of value the bankrupt may possess in alienable or leviable form when he files his petition. To this end the term "property" has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed. E.g., Horton v. Moore, 6 Cir., 110 F.2d 189 (contingent, postponed interest in a trust); Kleinschmidt v. Schroeter, 9 Cir., 94 F.2d 707 (limited interest in future profits of a joint venture); see 3 Remington, Bankruptcy ss 1177—1269 (Henderson ed. 1957). However, limitations on the term do grow out of other purposes of the Act; **one purpose which is highly prominent and is relevant in this case**

> **is to leave the bankrupt free after the date of his
> petition to accumulate new wealth in the future.**
>
> .          .          .
>
> Temporally, two key **elements pointing toward
> realization of a refund existed at the time these
> bankruptcy petitions were filed**: taxes had been paid
> on net income within the past three years, and the
> year of bankruptcy at that point exhibited a net
> operating loss.

382 U.S. at 379-80 (emphasis added). The facts of <u>Segal</u> are

distinguishable from those of the present situation because,

unlike the expected tax refund in <u>Segal</u>, there is no evidence

that Mr. Dahl knew of his cancer claim at the time he filed for

bankruptcy. As the Supreme Court noted in <u>Segal</u>, whether an

asset is "property" of the bankruptcy estate must be determined

by the purposes behind the Bankruptcy Act, and one of the

primary purposes of allowing Chapter 7 bankruptcy filings and

limiting the forfeiture of assets to those existing at the time

of the filing is to allow the bankrupt to start afresh and

accumulate new wealth in the future. In short, the rationale of

<u>Segal</u> (and the bankruptcy law interpreted by the Supreme Court

therein) does not support a decision to preclude Mr. Dahl from

obtaining a financial recovery on a claim that did not exist at

the time he filed for bankruptcy. <u>Id.</u> This is true despite the

fact that the alleged asbestos exposure giving rise to the claim

occurred long before that bankruptcy petition was filed – a

28

factual scenario considered by a bankruptcy court in Michigan in
In re Richards, 249 B.R. 859, 861 (Bankr. E.D. Mich. 2000), upon
which Defendants rely.

     In re Richards involved an asbestos claim for an
illness that was diagnosed after a debtor had filed for
bankruptcy, and while the bankruptcy action was still pending.
The court held (in accord with Segal) that, "in determining
whether a claim is property of the bankruptcy estate, the test
is not the date that the claim accrues under state law" but
"whether the claim is 'sufficiently rooted in the pre-bankruptcy
past'." 249 B.R. at 861. The court concluded that the debtor's
asbestos-related cancer claim was sufficiently rooted in his
pre-petition past and should therefore be considered part of the
bankruptcy estate based on the two facts that: (1) "All of the
allegedly wrongful conduct giving rise to the debtor's claim
occurred prepetition," and (2) "although the diagnosis was made
seven months after the petition was filed, that timing appears
to have been more a result of happenstance than of medical
necessity. It appears likely that both the onset of the debtor's
disease and a greater portion of its progress occurred before he
filed his petition." Id. (emphasis added). The Court notes that
In re Richards is not binding on this court and, in addition,
involved claims that were governed by Michigan law (under which

the causes of action accrued when the plaintiff "knew or should have known" of his asbestos-related illness, id.) rather than maritime law (under which an asbestos cause of action accrues when the illness manifests itself, or when the plaintiff has knowledge of the injury and its cause, Nelson, 2011 WL 6016990 (E.D. Pa. Oct. 27, 2011)).

The bankruptcy court in In re Richards found that the onset of the debtor's disease and most of its progress had occurred prior to the filing of the bankruptcy petition (as the disease was diagnosed only seven months after the petition had been filed – and while the petition was still pending). In the case at hand, Mr. Dahl was not diagnosed with cancer until over a year after his bankruptcy petition was filed (and approximately a year after the bankruptcy action was closed) – and there is no evidence in the record that Mr. Dahl knew of his cancer, or experienced any symptoms of that illness prior to the date on which the bankruptcy petition was filed (or the date on which he was discharged from bankruptcy). As such, unlike In re Richards (where an asbestos claim accrued under the applicable law when a plaintiff "should have" known of his illness), it cannot be concluded that Mr. Dahl's malignancy asbestos claim accrued (under maritime law) prior to the filing of his bankruptcy petition. Moreover, without evidence in the record to

the contrary, the Court is unwilling to conclude that the onset of Mr. Dahl's cancer – or any of its progress - occurred prior to the date of the filing of his bankruptcy petition. This is because mere pre-petition exposure to asbestos did not necessarily result in cancer. It was not until that illness actually manifest itself that the exposure gave rise to a claim – and an interest over which the bankruptcy trustee could potentially have ownership. Therefore, even when applying the rationale of In re Richards, the Court must conclude that although the alleged asbestos exposure giving rise to Mr. Dahl's cancer occurred prior to the filing of his bankruptcy petition, the post-petition malignancy claims are not "sufficiently rooted" in his pre-bankruptcy past to be deemed property of the bankruptcy estate.

Defendants also cite to a number of cases that did not involve an asbestos claim. In re Webb is factually analogous insofar as it involved a claim based upon a latent physical injury. 484 B.R. 501 (Bankr. M.D. Ga. 2012). In that case, a debtor received a post-petition class action settlement for congestive heart failure he was believed to have suffered as a result of having taken a particular medication years earlier. Although the congestive heart failure occurred two years prior to the filing of the bankruptcy petition, the debtor did not

31

know that there was any link between the medication and
congestive heart failure until well after his bankruptcy action
had been filed and closed. Upon the bankruptcy trustee's
petitioning for a reopening of the bankruptcy action to recover
this class action settlement from the debtor in order to
administer it as part of the bankruptcy estate, the court
concluded that the product liability claim was property of the
bankruptcy estate despite the fact that the debtor did not
become aware of the claim until after his bankruptcy action was
filed (and closed). Importantly, however, the court's decision
turned entirely on its reluctant acknowledgment that, under the
law applicable therein, the "discovery rule" did not apply to
the debtor's product liability cause of action. Specifically,
that court explained:

> **But after reconsidering Alvarez, the Court concludes
> that the inapplicability of the discovery rule was
> necessary to the Eleventh Circuit's holding.** The
> alleged malpractice was advising and filing a Chapter
> 7 bankruptcy instead of a Chapter 11 bankruptcy and
> failing to convert, resulting in the trustee selling
> assets at a price disagreeable to the debtor. See In
> re Alvarez, 224 F.3d at 1275; In re Alvarez, 228 B.R.
> 762, 763 (Bankr. M.D. Fla. 1998). The fight over
> ownership of the claim (malpractice arising from
> mishandling a bankruptcy case) occurred in the very
> bankruptcy proceeding that was the subject of the
> malpractice claim. Under these facts, the debtor
> necessarily discovered the injury and cause post-
> petition. **The discovery rule not applying is essential
> for the holding** — that the cause of action accrued as
> of the filing and thus was property of the estate —

because there is no logical way the discovery rule
could apply and the Court's holding stay the same.

> **Because In re Alvarez is binding on this Court, and
> thus all necessary elements of that decision are
> binding on this Court, the Court can only conclude
> that the discovery rule does not apply to the present
> circumstances. The Court will look to whether the
> elements of the product liability claim occurred
> before or after filing.** It is undisputed that
> everything, except for knowledge of cause, occurred
> prepetition. The Court thus holds that the product
> liability claim accrued prepetition and is estate
> property.

484 B.R. at 504-05 (emphasis added). Significantly, however,

maritime law recognizes the "discovery rule" in determining the

accrual of an asbestos-related claim. See Nelson, 2011 WL

6016990 (E.D. Pa. Oct. 27, 2011) (Robreno, J.). For this reason,

the rationale of In re Webb is inapplicable to the case at hand,

which is governed by maritime law (and under which, as explained

earlier herein, Mr. Dahl's claim did not accrue prior to the

filing of his petition and is not sufficiently rooted in his

pre-bankruptcy past to constitute property of the bankruptcy

estate).

In re Salander involved a debtor's effort to pursue a

claim against one of her creditors after her bankruptcy action

was closed. 450 B.R. 37 (Bankr. S.D.N.Y. 2011). The court held

that the claim was property of the bankruptcy estate for either

or both of two reasons: First, the court determined that, under

New York law, her claim had accrued pre-petition (because she knew of the alleged forgery giving rise to her claim prior to the filing of her petition) and was, therefore, property of the bankruptcy estate. Id. at 46. In this regard, this case is inapplicable to Mr. Dahl's situation, which is governed by maritime law, and for which there is no evidence of accrual of his cancer claim until after the bankruptcy action was filed and closed. See Nelson, 2011 WL 6016990 (E.D. Pa. Oct. 27, 2011) (Robreno, J.). Second, the court found (without much explanation) that, even if the debtor had not discovered the extent of the alleged forgery at issue, the actions giving rise to her claims (alleged fraudulent signing of documents) occurred prior to the petition and were, therefore, "sufficiently rooted in the pre-bankruptcy past." The factual scenario therein is distinguishable from that of Mr. Dahl's insofar as the fraud (and accompanying harm) had occurred and existed pre-petition regardless of whether and when they were discovered by Mrs. Salander. In contrast, Mr. Dahl's pre-petition asbestos exposure did not necessarily result in an injury at all and, instead, only resulted in injury upon the later manifestation of his illness. As such, based upon the evidence in the record, the crucial element of development of his asbestos illness occurred post-petition. Therefore, the rationale of In re Salander does

not lead to a conclusion that Mr. Dahl's asbestos claims are property of the bankruptcy estate – despite that fact that the alleged asbestos exposure giving rise to them occurred prior to the filing of the bankruptcy petition.

In re Strada Design Assocs., Inc. followed the same rationale as In re Salander and its analysis explicitly turned on the decision that formed the basis of In re Webb (Alvarez, 224 F.3d 1273). 326 B.R. 229, 236 (Bankr. S.D.N.Y. 2005). Thus, for the same reasons that In re Salander and In re Webb did not lead to the conclusion that Mr. Dahl's asbestos claims are property of the bankruptcy estate, In re Strada does not either.

In re Patterson involved three claims that a trustee sought to pursue on behalf of the bankruptcy estate. 2008 WL 2276961 (Bankr. N.D. Ohio June 3, 2008). In that case, the court concluded that the claims belonged to the debtor (and not to the estate) because, "[t]he three claims brought by the Trustee stem entirely from a single, post-petition event [because] all the elements necessary to sustain the Trustee's three claims arose post-petition." Id. at *5. As such, the facts of the case are entirely different from those of Mr. Dahl (whose asbestos exposure occurred pre-petition, while his cancer diagnosis occurred post-petition) and have no bearing on the case at hand.

In short, none of the cases relied upon by Defendants support the conclusion that Mr. Dahl's malignancy asbestos claims are property of the bankruptcy estate. Applying the rationale of Segal, the Court concludes that, given the facts of the present case, and the standard set forth by maritime law for determining accrual of an asbestos cause of action (including, specifically, its utilization of the "discovery rule"), Mr. Dahl's malignancy asbestos claims are not "sufficiently rooted in his pre-bankruptcy past to constitute property of the bankruptcy estate (pursuant to the exception to 11 U.S.C. § 541(a)(1) set forth in In re O'Dowd). Instead, the general rule of § 541(a)(1), as discussed in In re O'Dowd, 233 F.3d at 202 (limiting bankruptcy estate property to that in existence at the time of the filing of the petition), is applicable. Mr. Dahl's malignancy asbestos claims (which did not accrue until after the bankruptcy petition was filed and after Mr. Dahl was discharged from bankruptcy) are, therefore, not property of the bankruptcy trustee (and not subject to pursuit by creditors in the bankruptcy action). Accordingly, Defendants' motion for summary judgment on grounds of the real party in interest/standing will be denied as to Plaintiffs' post-petition malignancy claims. Anderson, 477 U.S. at 248-50.

## VI.  CONCLUSION

For all of the reasons stated above, Defendants'
motion for summary judgment will be denied.[14]

---

[14]        With respect to Plaintiffs' initial <u>non-malignancy</u>
claims: Defendants' motion for summary judgment on grounds of
judicial estoppel will be denied; Defendants' motion for summary
judgment on grounds that the bankruptcy trustee is the real
party-in-interest with ownership of these claims will be denied
without prejudice (pending proof that the trustee has sought to
reopen the bankruptcy action).

With respect to Plaintiffs' post-petition <u>malignancy</u>
claims, Defendants' motion for summary judgment will be denied.